IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ ENRIQUE HERNÁNDEZ-CASTRODAD ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> HON. SIGFRIDO STEIDEL, <br><br> Defendant. | CIV. NO.: 20-1507 (SCC) |

**OPINION AND ORDER**

Plaintiffs José Enrique Hernández-Castrodad, Iris Marta Marcano and the conjugal partnership composed by them brought this putative class action under 42 U.S.C. ¶ 1983 pursuant to the Court's original jurisdiction against Defendant Hon. Sigfrido Steidel, in his official capacity as Administrator of the Administration of Tribunals of the Commonwealth of Puerto Rico ("OAT," by its Spanish name). Plaintiffs allege violations of the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fifth and Fourteenth Amendments, and various Puerto Rico state law claims. *See* Docket No. 1. Defendant moved to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted. *See* Docket No. 13. Plaintiffs opposed. *See* Docket No. 15. Defendant then replied

to Plaintiffs' opposition, *see* Docket No. 18, to which Plaintiffs surreplied, *see* Docket No. 21. For the reasons stated herein, Defendant's Motion to Dismiss is GRANTED.

## I.    Background

Beginning sometime after 1990, the OAT changed the procedure through which it handled funds received in the name of interested parties as part of judicial proceedings. *See* Docket No. 1, ¶ 6. It began depositing such funds in the name of individual parties into aggregate interest-bearing accounts, under the control and disposition of judicial officers. *See id.* at ¶ 7. In 2011, Plaintiffs were awarded $2 million as part of an eminent domain case in Puerto Rico state court, and those funds were deposited into interest-bearing accounts controlled by the OAT. *See id.* at ¶¶ 18-20. Plaintiffs then filed motions requesting the disbursement of those funds in specific amounts, which were paid out by OAT accordingly. *See id.* at ¶ 20; Docket No. 13, Ex. 3. The interest accrued on those funds was never paid to Plaintiffs. *See* Docket No. 1, ¶ 20. Plaintiffs claim that the putative class is comprised of all other parties that, from around 1990 onward, had monies deposited in their name in Puerto Rico state court, withdrew said monies but never received the interest corresponding to those funds. *See id.* at ¶ 24. Plaintiffs also allege that Defendant has no mechanism in place to notify such interested parties that their money is generating interest and that they may request its disbursement, nor do they have a

system to calculate that interest as it accrues. *See id.* at ¶ 8. Moreover, Plaintiffs allege, the OAT unilaterally apportions an "administrative charge" of approximately fifteen percent to the interest accounts. *See id.* at ¶ 15.

Defendant filed a Motion to Dismiss under Rule 12(b)(6), arguing that he is protected from suit by sovereign immunity, that Plaintiffs' claims are time-barred, that they have failed to allege a constitutional violation and, in the alternative, that the *Rooker-Feldman* doctrine bars their claims. *See* Docket No. 13. After the parties completed their briefings, the Court held a hearing regarding Defendant's Motion to Dismiss on September 16, 2021. *See* Docket No. 25.

In the Motion to Dismiss and at the hearing, Defendant argued that Puerto Rico Act No. 69, 7 L.P.R.A. § 253b ("Law 69"), which was passed in 1991, permits the Puerto Rico Judiciary to place funds obtained by individuals in state court into interest-bearing accounts and to charge a fee for the maintenance of those accounts. A corresponding regulation approved by the Puerto Rico Judiciary (the "Regulation") allows the same but also requires that the interest accrued "shall be delivered to the owners, through the procedure provided by [Defendant], once custody and management by the Judicial Branch ends." *See* Docket No. 13, Ex. 1. Law 69 and the Regulation, in Defendant's view, put Plaintiffs on notice that their award was generating interest and that they may request its disbursement. Defendant also argues that

parties request and are paid the interest owed to them every day in Puerto Rico state court.  Defendant alludes to a common process in state court in which the interested party moves the Puerto Rico state court to order the OAT to calculate and remit the interest owed to it. Defendant clarified at the hearing that Plaintiffs never made such a request and therefore there has been no taking under the Takings Clause nor deprivation of a right under the Due Process Clause in this case. Had Plaintiffs done so, they would have been paid the interest, though Defendant concedes that this payment is not processed automatically and must be affirmatively requested by the owner.

At the hearing, Plaintiffs reiterated their argument that there is in fact no set procedure by the OAT to calculate the interest owed to concerned parties nor for those parties to retrieve that interest, making it impossible for parties to access those funds. Plaintiffs explained that it is for this reason that they never requested the disbursement of the interest owed to them, as it would amount to nothing more than a mere exercise in futility. Plaintiffs contend that there is also no form of notice to the interested parties to alert them that the interest even exists. Additionally, according to Plaintiffs, the mere fact that the interest is sitting in accounts controlled by the OAT, while that administration also cuts into that interest amount by charging a fee for maintaining those accounts, constitutes a taking and a violation of due process.

Plaintiffs contend that this impenetrable system leaves innumerable parties without payment of money owed to them, in violation of their constitutional rights.

## II.    Standard of Review

Defendant moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. However, for reasons discussed *infra*, we dismiss this action under Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") for lack of subject matter jurisdiction. But because dismissal under these two rules takes into consideration "the same basic principles," we need only articulate those principles once, under the well-established Rule 12(b)(6) standard. *Lyman v. Baker*, 954 F.3d 351, 359-60 (1st Cir. 2020).

The First Circuit has devised a two-step analysis for considering a Rule 12(b)(6) motion to dismiss under the context-based "plausibility" standard established by the Supreme Court. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz c. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). While a complaint need not give detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678-79.

Second, the court must then "take the complaint's well-[pleaded] (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz*, 669 F.3d at 55. Plausible means something more than merely possible, an assessment the court makes by drawing on its judicial experience and common sense. *Id*. (citing *Iqbal*, 556 U.S. at 678-79). To survive a Rule 12(b)(6) motion, a plaintiff must allege more than a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. However, the Supreme Court has clarified that it does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III.   Analysis

In their briefings and at the motion hearing, the parties have advanced a myriad of arguments regarding Defendant's Eleventh Amendment immunity defense, the merits of Plaintiffs' constitutional claims and whether Plaintiffs' claims are time-barred. However, we cannot address any of these contentions until we resolve a threshold issue that we see as dispositive in this case – standing. *See Berner v. Delahanty*, 129 F.3d 20, 23 (1st Cir. 1997) ("Standing is a threshold issue in every federal case and goes directly to a court's power to entertain an action."). "[T]he general rule is that a court should first confirm existence of rudiments such as

jurisdiction and standing before tackling the merits of a
controverted case." *Id.* Because we find Plaintiffs have no
standing under Article III of the Constitution and are
therefore precluded from reaching the merits of their claims,
we need only address that issue to decide the outcome of this
case.[1] After all, "[i]f a party lacks standing to bring a matter
before the court, the court lacks jurisdiction to decide the
merits of the underlying case." *United States v. AVX Corp.*, 962
F.2d 108, 114 (1st Cir. 1992). Finally, because Defendant's
Motion to Dismiss comes to us before any class is certified, we
evaluate only whether Plaintiffs have standing to bring their
own claims. *Gustavsen v. Alcon Labs., Inc.*, 903 F.2d 1, 7 (1st Cir.
2018).

The criteria for standing are well-settled and incorporate
"a blend of constitutional requirements and prudential
considerations." *Valley Forge Christian Coll. v. Ams. United for
Separation of Church and State*, 454 U.S. 464, 471 (1982). In the
constitutional purlieus, to establish that a dispute qualifies as
an Article III "case" or "controversy" thereby enabling a
federal court to entertain the suit, the party bringing the
action must first demonstrate that she has "[1] suffered an

---

[1] While the parties themselves have not raised the issue of standing,
"federal courts are required *sua sponte* to examine jurisdictional issues
such as standing." *B.C. v. Plumas Unified School Dist.*, 192 F.3d 1260, 1264
(1st Cir. 1999). Moreover, Defendant hints at the issue of standing by
contending that Plaintiffs constitutional claims are barred because
Plaintiffs never requested the disbursement of their interest, though they
couch this argument in terms of the merits rather than in terms of
standing.

injury in fact, [2] that her injury is fairly traceable to the disputed conduct, and [3] that the relief sought promises to redress the injury sustained." *Osediacz v. City of Cranston*, 414 F.3d 136, 139 (1st Cir. 2005) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also* U.S. Const. art. III, § 2, cl. 1. It is the plaintiff's burden to establish these three elements and, at the motion-to-dismiss stage, she must plead "sufficient factual matter to plausibly demonstrate standing to bring the action." *Pérez-Kudzma v. United States*, 940 F.3d 142, 145 (1st Cir. 2019) (internal quotations omitted).

In our view, this case hinges on whether Plaintiffs have alleged that they suffered *vel non* an injury in fact, the element that is presented "first and foremost" in our tripartite inquiry. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). To establish an injury in fact, a plaintiff must show that she has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *see also Katz v. Pershing, LLC*, 672 F.3d 64, 71 (2012) (explaining that the "actual or imminent" requirement "ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time"). An injury is "concrete" if it is real and not abstract. *Id.* at 1548. To be particularized, the plaintiff must have been affected "'in a personal and individual way' by the injurious conduct,"

*Hochendoner v. Genzyme Coro.*, 823 F.3d 724, 731 (1st Cir. 2016) (quoting *Spokeo*, 136 S.Ct. at 1548), and must allege that she herself, "is among the persons injured by that conduct," *id.* at 732. Prudence requires that the injury go beyond a "generalized grievance[]"; injuries that are "too widely shared or are comparable to the common concern for obedience to law may fall into the category of generalized grievances about the conduct of government." *Lyman v. Baker*, 954 F.3d 351, 360-61 (1st Cir. 2020) (internal citations omitted).

It is at this phase of the inquiry that Plaintiffs' claims falter. Plaintiffs allege Defendant has violated the Takings Clause and the Due Process Clause by systematically failing to disburse to the concerned parties the interest accrued on monies won by those parties, thus appropriating private funds without just compensation and depriving them of their property without due process of law. The massive, and ultimately dispositive, omission in that contention is that they fail to allege that *they themselves* ever made a request in Puerto Rico state court for the disbursement of the interest owed to them.  When asked at the motion hearing why they failed to make such a request, Plaintiffs answered that doing so would be useless given the lack of procedure by Defendant to calculate and remit that interest to its owner.

This contention points to precisely the type of abstract and hypothetical injury that cannot overcome the constitutional barrier to standing. To be clear, Plaintiffs take no issue with

Law 69, the Regulation and the corresponding practice that allows Defendant to place monies won in state-court litigation into interest-bearing accounts and maintain those accounts until the party of interest requests a disbursement. Rather, their objection lies with the supposedly opaque and unmanageable process – or lack thereof – of calculating and disbursing those funds to their owners, and the charging of maintenance fees by the OAT in the meantime. Yet without an allegation that Plaintiffs made some attempt to retrieve their money and a subsequent denial by a state actor, we cannot contrive the existence of a constitutional injury, much less assess when or how it occurred or the severity of its damage. *See Whitemore v. Arkansas*, 495 U.S. 149, 155 (1st Cir. 1990) (emphasizing that the injury must be concrete in both "a qualitative and temporal sense," as well as "distinct and palpable" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975))). In the absence of such allegation, we do not know that Defendant would have withheld the interest had Plaintiffs requested it; according to Defendant, parties successfully move the Puerto Rico state court for the disbursement of interest owed every day. And while we take the non-conclusory factual allegations from the Complaint as true, we nonetheless discern no allegation that amounts to a taking

under the Takings Clause or the deprivation of a right under the Due Process Clause.[2]

  In our view, Plaintiffs' claims seem more akin to a generalized grievance regarding the conduct of government, a practice that the Supreme Court has repeatedly held cannot serve as the basis for Article III standing. *See Lance v. Coffman*, 549 U.S. 437, 439-441 (2007) (listing cases). At the core of this lawsuit is a concern regarding an inefficient government mechanism affecting litigants in Puerto Rico state court, not that Plaintiffs have borne a particularized burden as a result of that mechanism sufficient to grant them standing. *Cf. Becker v. Fed. Election Comm'n*, 230 F.2d 381, 390 (1st Cir. 2000) (finding that the voter plaintiffs' general concern for corruption of the political process caused by corporate sponsorship of candidate debates was a not sufficiently concrete personalized injury to establish standing).

  Several aspects of this case, beyond Plaintiffs' lack of particularized injury, counsel such a conclusion. First, part of the injunctive relief sought by Plaintiffs is essentially a *mandamus* from the Court that the OAT implement a clearer and more accessible system of notice, calculation and

---

[2] In a similar vein, Plaintiffs allege that this inaccessible process and the lack of notice regarding the accrual of interest on their damages award renders retrieval of their interest impossible. However, until Plaintiffs actually test that theory by actually attempting to retrieve such interest, it amounts to a conclusory allegation and the Court need not take it as true under the governing pleading standard. *See Schatz*, 669 F.3d at 55. Moreover, the very existence of this case belies their argument regarding lack of notice.

disbursement of the interest being held pursuant to Law 69. In addition, during the motion hearing, Plaintiffs contended that this relief is warranted because the Regulation requires that Defendant implement such a system. It therefore appears to us that Plaintiffs are using this lawsuit to ensure that the Puerto Rico Judiciary follows the rules out of a "common concern for obedience to law," *FEC v. Akins*, 524 U.S. 11, 23 (1998), rather than to seek redress for a particular harm they have suffered. Plaintiffs also object to the general practice by Defendant of charging fees on the interest for maintaining the accounts in which the interest is held but fail to allege how this constitutes a particular injury to them rather than a generalized complaint about the conduct of government.

Moreover, Plaintiffs cannot mask their disqualifying generalized grievances under the guise of a class action. By simply alleging that many other parties are left similarly at sea when it comes to navigating the OAT's process of recovering interest, Plaintiffs do not turn a generalized complaint into a concrete one.[3] We reiterate that, without

---

[3] To be clear, "[t]he fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance. The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm." *Spokeo,* 126 S.Ct. at 1548 n. 7. Thus, "[t]hat a suit may be a class action . . . adds nothing" to the inquiry; "'even named plaintiffs who represent a class must allege and show' a past or threatened injury to *them*, and not just to 'other unidentified members of the class to which they belong' and which they purport to represent." *Amrhein v. eClinival Works, LLC,* 954 F.3d 328, 331 (1st Cir. 2020) (quoting *Spokeo,* 136 S.Ct. at 1547 n.6) (internal quotations omitted) (emphasis in original).

having directly challenged Defendant's practices under Law 69 to concretely establish that such practices do not allow for the recovery of interest to them, Plaintiffs' constitutional injury is merely conjectural and insufficient to establish standing.

This is not to say that we condone Defendant's practices regarding the holding, calculating and disbursement of interest held under Law 69, quite the contrary. It is evident that the Puerto Rico Judiciary could implement a more organized system. However, this does not change the fact that, because Plaintiffs fail to meet the requirements for Article III standing, we do not have subject matter jurisdiction to hear their claims and must dismiss them under Rule 12(b)(1).[4]

## IV.   Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss at Docket No. 13 is GRANTED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of September 2021.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE

---

[4] Because we dismiss Plaintiffs' federal-law claims for lack of subject matter jurisdiction, we decline to extend supplemental jurisdiction over Plaintiffs' pendent state-law claims and we dismiss those claims without prejudice. *See González-De-Blasini v. Family Dep't*, 377 F.3d 81, 89 (1st Cir. 2004) ("[T]he unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal . . . of any supplemental state-law claims." (quoting *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995))).